UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONNA VIZCAINO, et al., | CASE NO. C93-0178-JCC |
| Plaintiffs, | |
| v. | REPORT & RECOMMENDATION REGARDING CLASS MEMBERS' APPEALS ON THE MERITS |
| MICROSOFT CORPORATION, et al., | |
| Defendants. | |

**Introduction**

Twenty-one class members have filed an appeal on the merits from the Settlement Administrator's determination disallowing their claims. The appeals were taken pursuant to an order entered by The Honorable John C. Coughenour providing class members the opportunity to submit a written statement disputing the Settlement Administrator's determination, and explaining why good cause existed to accept their claim. (DKT 1188) Judge Coughenour referred the appeals to the undersigned Magistrate Judge. (DKT 1103, and docket entry of January 18, 2005.)

**Settlement History**

The parties to this class action matter entered into a Settlement Agreement on December 8, 2000. (DKT 702) On December 12, 2000, and January 10, 2001, Judge Coughenour preliminarily approved the terms of the proposed settlement, and scheduled a fairness hearing for

REPORT & RECOMMENDATION REGARDING CLASS
MEMBERS' APPEALS ON THE MERITS -1

February 27, 2001. Proper notice of the settlement and the fairness hearing was provided to class members whose identity was gathered from the records of temporary employment agencies, Microsoft's records, and information forms submitted by class members to class counsel. Notices were mailed to approximately 37,155 individuals, of which approximately 5,773 were returned by the United States Postal Service as undeliverable. The Notice and Settlement Agreement were published on class counsel's website (www.bs-s.com), which received over 21,000 user sessions in the three month period following publication of the notice. A summary notice was published in newspapers in Seattle, Tacoma, and San Francisco. The settlement was publicized in the national and international media, and on the Internet.

The terms of the Settlement Agreement (DKT 702) provided for Microsoft to pay $96,885,000 into a Settlement Fund, to be distributed to class members after payment of incentive awards to the plaintiffs, the fees of class counsel, and the costs of settlement and claims administration. The Settlement Agreement set forth a process for filing claims, specified the criteria for determining the eligibility of class members, and established a formula for distributing the Settlement Fund. Following the fairness hearing, the Court entered an order approving the settlement. (DKT 779) The Court retained jurisdiction to interpret and enforce the Settlement Agreement, to adjudicate disputes between class members and the Settlement Administrator, to set schedules, and to enter orders as necessary to implement the Settlement Agreement.

The Settlement Agreement provided for the selection of a Settlement Administrator to notify non-excluded class members of their opportunity to file claims, to determine the eligibility of the claimants, and to resolve and process claims. Class members could petition the Court to review the Settlement Administrator's determination regarding the amount of that member's share of the fund. On November 7, 2001, the Court approved the terms of the Contract for Services of Settlement Administrator between Rust Consulting, Inc. (hereafter "Rust" or "Settlement Administrator") and the Microsoft Temp Workers' Settlement Fund. (DKT 832) The Settlement Administrator Agreement appointed Rust Consulting, Inc. as Settlement Administrator to act as

a fiduciary with respect to handling, managing, and distributing settlement funds for qualifying class members. Services included development of a database of class members, preparing and mailing a Notice of Work History and Claim Form Packet to non-excluded class members, providing telephone and other class member support services, processing claims by determining eligibility of claimants and resolving eligibility issues, and preparing disbursement instructions for the Custodial Agent. (*Id*., Attachment A) The Court approved the Notice of Work History and Class Action Settlement and the Summary of Eligibility Provisions and Procedures for Making a Claim for Payment (hereafter "notice"), as well as the Claim Forms (hereafter "claim forms"), on March 20, 2003. (DKT 925)

Eligibility criteria was set out in the Settlement Agreement. In order to be eligible for benefits under the settlement, a person must be a "Qualifying Class Member", defined as someone who was on assignment at Microsoft classified by Microsoft as an independent contractor (defined at ¶42 of the Settlement Agreement) or employee of a third-party employment agency (defined at ¶54 of the Settlement Agreement), working 80 or more hours each month for at least nine consecutive months between January 1, 1987 and June 30, 2000. (Settlement Agreement, ¶49) If the individual qualified as a class member, then a determination was made as to whether the person worked during defined "Eligible Periods" (Settlement Agreement, ¶¶32, 47) consisting of six-month Offering Periods from January 1, 1987 up to and including June 30, 2002, when a Microsoft employee would have been eligible to participate in Microsoft's stock purchase plan. Each six-month period covered either the period of January 1 through June 30 or July 1 through December 31 of a given year. A minimum threshold of 750 hours was required to have been worked in each six-month period, and the class member must have worked at least one day during the first and last week of the eligible period (Settlement Agreement, ¶32). To receive an award under the settlement, an individual must meet eligibility criteria as a "qualifying class member", and have been on assignment during one or more "eligible periods".

/ / /

## Claims Processing History

Rust, the Settlement Administrator, has extensive experience in class action matters, having provided services in class action cases involving employment, antitrust, securities fraud, property damage, product liability, insurance, and consumer issues. (DKT 1100)  Rust has provided notification and/or claims administration services in more than three hundred (300) class action cases.

As stated in the Declarations of Michelle Zeller Dalsin (DKT 1100) and Kim R. Schmidt (DKT 1240), Senior Project Administrators for Rust, each identified class member was provided with a claim form and a statement of the class member's work history as determined by Rust from all available records, including ten data sources.  Class members were directed to a toll free number and web site established to answer questions concerning the settlement, and were provided with an explanation of the criteria for establishing claim qualification. Class members were advised that if they wished to correct their work history, further documentation would have to be provided to Rust.

Upon receipt of a claim, the forms were initially reviewed, and information was entered into the Claims Database. (Schmidt Declaration, ¶6)  If the claimant submitted any changes, the claim was also reviewed by a supervisor.  If the change could not be verified, additional documentation was requested from the claimant. If documents supported a change, the work history database was updated. The ultimate determination as to a claimant's eligibility and work history was made by Rust, as provided by the Settlement Agreement (¶94).

1,588 Determination Letters were mailed to class members stating whether or not the requested work history changes were accepted or rejected, the reason(s) for any rejection, and a current list of qualifying work service. Ninety-eight appeals from the initial Determination Letters were filed. The appeals were reviewed by Rust, together with any additional documentation submitted by the class member, and a Final Determination Letter was sent to each appealing class member.  Twenty-four appeals were accepted.  Of the 74 that were rejected, 21 have appealed to

the Court [1]. The rejected claims fall into five categories:

    A.    The work performed by the individual was not considered eligible service as defined in the Settlement Agreement, and therefore the individual did not meet the definition of "class member";

    B.    The individual did not work at least 80 hours per month for nine consecutive months as required by the Settlement Agreement;

    C.    The individual did not work at both the beginning and end of the eligible period;

    D.    The individual did not work a minimum of 750 hours during an eligible period;

    E.    Insufficient documentation of additional work history.

The Settlement Agreement does not state the standard whereby the Court reviews the determinations of the Settlement Administrator, whether a *de novo* review, or an evaluation of whether the determination was either arbitrary and capricious or erroneous as a matter of law. Under either of these standards, the Court finds the determinations by the Settlement Administrator to be correct.

Each appeal is discussed below, with a summary of Rust's determination and the reasons set forth by the appealing class member challenging the decision on the merits of their claim.

**Discussion of Appeals**

<u>Kristen Acker</u> (DKT 1186, 1193(duplicate))

Available documents establish that Ms. Acker qualified for benefits for 7 six-month Offering Periods during which Microsoft employees would have been eligible to participate in stock purchase plans, but she did not qualify for an additional six-month period of January to June 1990. Ms. Acker did not establish that she worked nine or more consecutive months with at least 80 hours in each of the nine months until May 1990, as the work history documentation provided to Rust showed that she only worked 28.5 hours in April 1990. Therefore, her first group of nine

---

[1] Three of the 21 filed an appeal after the Court-ordered December 13, 2004, deadline (DKT 1188): Paul Redmond Johnston (DKT 1233), Daniel Queva (1235) and Philip Rezek (1234).

consecutive months with at least 80 hours per month did not begin until May 1990, and the first six-month Offering Period for which she qualifies to receive benefits is July to December 1990.

On appeal, Ms. Acker submitted records to Rust from the Washington State Employment Security Department showing hours worked, *inter alia*, during the first and second quarters of 1990. However, the records do not establish the amount of hours that Ms. Acker worked per month, but rather group all the hours together in the quarter. Therefore, Ms. Acker has not established that she is a qualifying class member who worked at least 80 hours per month in nine consecutive months in order to qualify her to receive benefits for an Offering Period before the six-month period of July to December 1990.

Sheryl G. Bankston (DKT 1192)

Ms. Bankston's claim was denied on two grounds, either of which would be adequate to support a denial of her claim. The records of the Employment Security Department only show time listed by quarters (3 month intervals), and therefore do not establish that Ms. Bankston worked the requisite 80 hours each month for nine consecutive months during the relevant time period. Furthermore, Ms. Bankston's work for one of her employers is not shown to have been at Microsoft in the capacity of temporary agency employee or independent contractor, as required for a showing of qualifying service under the Settlement Agreement.

Lars Barsoe (DKT 1253)

Mr. Barsoe did not work for nine consecutive months with at least 80 hours per month as a temporary agency employee or independent contractor as required by the Settlement Agreement. His first month working at least 80 hours of service as an independent contractor was October 1989, only four months before he became a Microsoft W-2 employee on January 29, 1990 and no longer qualified for benefits under the Settlement Agreement.

Franck Buré (DKT 1199, 1200)

Mr. Buré's first month with at least 80 hours as a temporary agency employee or independent contractor as required by the Settlement Agreement was July 1989. He was hired as

a Microsoft employee on February 26, 1990, eight months later. To qualify for benefits under the Settlement Agreement, nine consecutive months of work must be established. Mr. Buré's claim falls short of the requisite showing and was appropriately denied.

Rodney Cook (DKT 1187, 1250)

Mr. Cook was found to be eligible for settlement benefits for the January to June 1997, July to December 1997 and January to June 1998 Offering Periods.

Mr. Cook asserts that he should be entitled to receive benefits for six-month Offering Periods that preceded his reaching the status of a Qualifying Class Member, arguing that the Settlement Agreement does not preclude this. (DKT 1250) He also argues that Microsoft's Employee Stock Purchase Plan does not include a comparable requirement of working nine consecutive months with at least 80 hours per month to qualify for participation in the ESPP.

The specific provisions of Microsoft's plan are not relevant, since class members are only entitled to settlement benefits as specifically stated in ths Settlement Agreement. (¶17)

Furthermore, Mr. Cook's assertion that he should receive benefits for an Offering Period that occurred before he met the requirements to achieve the status of a "qualifying class member" is simply not supported by a plain reading of the Settlement Agreement. The Settlement Agreement defines a "qualifying class member" as a Non-Excluded Class Member who (a) worked at least nine Consecutive Months, (b) was on assignment for an Eligible Period, and ( c) performed personal services on assignment for Microsoft between January 1, 1987 and June 30, 2000 (emphasis added). The payment formula for receiving an award addresses "each such Eligible Period for each Qualifying Class Member" (emphasis added). The six-month Offering Periods when a Microsoft employee would have been eligible to participate in Microsoft's stock purchase plan only have relevance as "eligible periods" once an individual becomes a Qualifying Member. An ambiguity will not be read into a contract where it can reasonably by avoided by reading the contract as a whole. *McGary v. Westlake Investors*, 99 Wn.2d 280, 285, 661 P.2d 971 (1983).

The Settlement Administrator has interpreted the nine-consecutive-month requirement as a threshold requirement, which is a reasonable interpretation in light of the fixed-Fund nature of the Settlement and its proration among Qualifying Class Members, and a reading of the Agreement as a whole.

Mr. Cook was not able to produce documents that could verify any earlier time period of 9 consecutive months with at least 80 hours prior to the January to June 1997 Offering Period. Therefore he is not entitled to benefits for any additional Period.

George Cribbs (DKT 1195)

Mr. Cribbs has not established that he was a Qualifying Class Member as defined by the Settlement Agreement, but rather was classified as a vendor. The documentation that he submitted consists primarily of invoices to Microsoft for providing models for photo shoots, showing that he set his own hours, dictated his own pay, and worked from his own office rather than at Microsoft. Therefore he did not qualify to receive benefits under the Settlement Agreement.

Pnina Eliav (DKT 1201)

Ms. Eliav has not demonstrated eligibility for a share of the settlement fund. The records indicate that April 1999 was the first of her nine consecutive months with at least 80 hours per month. This would establish eligibility for benefits for the Offering Period of July 1999 to December 1999, except that she did not work at least one day during the last week of that Period (her last date was December 17, 1999). Therefore, she does not qualify for that Offering Period.

Ms. Eliav asserts that 40 bonus hours paid in August 1999 were intended to be counted as vacation time taken in March 1999. However, there is no verification of this, or that the hours were anything other than what they purport to be, that is, "bonus hours" paid in August. Therefore, Ms. Eliav does not qualify for benefits under the Settlement Agreement.

Danny Fyffe (DKT 1197)

Mr. Fyffe qualified for benefits for the six-month July to December 1999 Offering Period.

REPORT & RECOMMENDATION REGARDING CLASS
MEMBERS' APPEALS ON THE MERITS -8

He asserts eligibility for the January to June 1999 and January to June 2000 Periods. However, the documentation does not show that he performed work at the beginning of the January to June 1999 Period as required, as his start date was February 22 of that year. The documentation does not show that he performed work at the end of the January to June 2000 Periods as required, as his end date was March 3, 2000. Therefore, he does not qualify for additional benefits.

<u>Tom Grauman</u> (DKT 1191, 1232)

Mr. Grauman qualified for benefits for the six-month Offering Period of July to December 1988, as his first of nine consecutive months with at least 80 hours was February 1988. He claims credit for time worked in 1986, but the Settlement Agreement provides that only time worked after December 29, 1986, will be used for eligibility determinations.

Mr. Grauman also seeks to receive benefits for three additional six-month Offering Periods, January to June 1989, January to June 1990, and July to December 1990. However, the records that he provided do not establish that he worked at least 750 hours during these Periods. His assertion that he worked more time than he billed Microsoft is not adequate to establish his eligibility for benefits during these additional Periods.

<u>Kevin J. Hackett</u> (DKT 1227)

Mr. Hackett's documentation establishes that he only worked eight consecutive months at the minimum 80 hours per month, rather than the nine as required by the Settlement Agreement. His request for special consideration of the fact that he worked lower hours for one month while attending to a family emergency amounts to a request for a waiver of that requirement as it applies to him, which is not allowed by the Settlement Agreement. Therefore, he does not qualify for benefits under the settlement.

<u>Pamela Hafey</u> (DKT 1198)

Ms. Hafey was found to have qualified for benefits for 3 six-month Offering Periods, January to June 1998, January to June 1999, and July to December 1999. She appeals the denial of benefits for the January to June 2000 Period. However, Ms. Hafey did not work at least one

day during the last week of that Period, as required by the Settlement Agreement. Her end date was May 17, 2000. Therefore, she does not qualify for benefits for that Offering Period.

### Mary G. Harbison (DKT 1203)

The first month for which Ms. Harbison worked nine consecutive months with at least 80 hours per month was September 1992. Therefore, the first six-month Offering Period for which she was qualified to receive benefits was January to June 1993. However, Ms. Harbison did not work at least one day during the last week of that Period as the Settlement Agreement requires, her last day of work during the Offering Period being June 12, 1993. As a result, she does not qualify for benefits under the settlement.

### Redmond Johnston (DKT 1233)

Mr. Johnston became a Microsoft W-2 employee on June 30, 1997. While he was eligible to receive benefits for the July to December 1996 and January to June 1997 Offering Periods, his status as a Microsoft employee (and resulting eligibility for the Microsoft Employee Stock Purchase Plan benefits) made him ineligible to receive benefits under the Settlement Agreement for the following six-month Period of July to December 1997.

Mr. Johnston also asserts his eligibility for benefits for the January to June 1996 Offering Period. However, he did not work at least one day during the first week of the Period as the Settlement Agreement requires, his first day being February 27, 1996. He has not established eligibility for benefits for additional Periods. Furthermore, his appeal from the Settlement Administrator's final determination was filed after the Court-ordered deadline of December 13, 2004.

### Steve Newman (DT 1196)

Mr. Newman did not work nine consecutive months with at least 80 hours of service per month until August 1996. Therefore, the first Offering Period for which he qualifies for benefits is January to June 1997. He also qualifies for the Periods of July to December 1997 and July to December 1999. He did not qualify for a Period before January 1997, although he worked on

assignment for Microsoft prior to that date, because the hours worked per month were not sufficient. He did not qualify during 1998 because the documents show that he did not perform work at the both the beginning and the end of either Offering Periods during that year. He did not qualify for the January to June 1999 Period because he was classified as a vendor during that time and was presumptively not eligible for benefits under the Settlement Agreement and he has not made a showing that he should not be so classified. He did not qualify for benefits for the January to June 2000 Offering Period, because he did not work at least one day during the last week of the Period, as required by the Settlement Agreement.

Daniel L. Queva (DKT 1235)

Mr. Queva did not meet the qualifications of a class member. He did not meet the nine consecutive month requirement. Although he worked at least 80 hours per month for a period of eight months from May to December 1989, he did not meet the 80 hour per month minimum for either April 1989 or January 1990. Furthermore, his appeal from the Settlement Administrator's final determination was filed after the Court-ordered deadline of December 13, 2004.

Ranjit S. Rakhra (DKT 1230)

Mr. Rakhra's claim was denied because he was not able to submit documents showing that he qualified as a class member under the terms of the Settlement Agreement. He asserts that he worked as a temporary worker assigned to Microsoft, and submits IRS Form 1099MISC showing that he received compensation from Microsoft in 1989. However, Microsoft has no records for Mr. Rakhra prior to his employment as a permanent employee on June 20, 1989, and the documents offered by Mr. Rakhra neither provide sufficient information to determine the purpose of this compensation, whether he worked at the beginning and end of an Offering Period, or whether he worked the required number of consecutive months and minimum hours to qualify for benefits. Therefore, his claim was properly denied.

Philip Rezek (DKT 1234)

Mr. Rezek is qualified to receive benefits for 8 Offering Periods. He seeks to be found

eligible for additional Periods, those being January to June 1994, January to June 1995, July to December 1995 and July to December 1999.

Mr. Rezak was not on assignment at the beginning of the January to June 1994 Offering Period, so he does not qualify for benefits for that Period.

Mr. Rezak was found by Rust to not be eligible for either of the two Offering Periods in 1995 because he did not work at least 750 hours during either Period. Mr. Rezak asserts that hours billed on certain invoices were applied by Rust to the wrong Period. Specifically, he suggests that Rust allocated all of the hours on invoice #95006 (covering work performed between 6/4/95 to 7/9/95) to the second 1995 Offering Period, pointing out that the invoice covers dates in both the first and second 1995 Periods. Mr. Rezak does not address, however, the fact that the first invoice of the first 1995 Period also includes work performed on dates that <u>precede</u> that Offering Period.

The Settlement Administrator's April 5, 2004 letter to Mr. Rezak states that the hours listed on the relevant invoice were allocated based on the days represented on the invoices, resulting in 744.43 hours worked from January 1995 to June 1995, which, upon examination, appears to be correct. Therefore, Mr. Rezak fell short of establishing entitlement to benefits during either of the two Offering Periods in 1995.

The documents available for the July to December 1999 do not show that Mr. Rezak worked at least one day in the last week of the Offering Period. He states that the relevant documents are missing. As a result, his eligibility for benefits during this Offering Period cannot be established. Furthermore, his appeal from the Settlement Administrator's final determination was filed after the Court-ordered deadline of December 13, 2004.

<u>Christopher R. Saranec</u> (DKT 1194)

Microsoft records show that Mr. Saranec was a Microsoft W-2 employee. He seems to assert that he was an independent contractor but does not submit documents to support this claim. He was properly found to not be a qualifying class member.

REPORT & RECOMMENDATION REGARDING CLASS
MEMBERS' APPEALS ON THE MERITS -12

<u>John Shefcik</u> (DKT 1216)

Mr. Shefcik was found to qualify for benefits during the January to June 1995 and July to December 1995 Offering Periods. He claims to be qualified for benefits for earlier Periods. Although Mr. Shefcik did work in 1994, his start date is shown to be July 12. Therefore, he did not work at the beginning and end of either of the two Offering Periods in 1994, as required by the Settlement Agreement. No work history records have been located which show that Mr. Shefcik worked during any other eligible Periods. Therefore, his eligibility for benefits was properly limited to the two Offering Periods in 1995.

<u>Kam Sitthidet</u> (DKT 1184, 1229)

Mr. Sitthidet did not work for nine consecutive months on assignment at Microsoft. The work history shows six months of work from December 1994 to May 1995 and three months in 1997. Mr. Sitthidet asserts that he worked the required minimum number of hours (DKT 1184, 1229). However, he did not meet the requirement of nine consecutive months, and therefore does not qualify for benefits under the Settlement Agreement.

<u>Stephen Stout</u> (DKT 1204)

Mr. Stout was mailed an initial Determination Letter stating that he did not qualify for benefits under the Settlement Agreement because the documentation did not establish that he worked at the beginning of an Offering Period [2]. Mr. Stout submitted a form completed by his manager indicating that he worked in January 1997. However, to qualify for benefits it must be established that the individual worked at least one day in the first week of the Period, and the manager's letter did not provide this information. The report of quarterly hours from the Washington State Employment Security Department submitted by Mr. Stout did not provide the necessary information, since the report does not indicate specific dates worked but only a total number of hours worked in that quarter. The report also shows that the number of hours worked

---

[2] Mr. Stout did not request an administrative review of this initial determination, but appeals from that initial determination.

REPORT & RECOMMENDATION REGARDING CLASS
MEMBERS' APPEALS ON THE MERITS -13

per quarter by Mr. Stout were varied, so the document does not permit an inference that Mr. Stout worked at the beginning of the Offering Period.

## Conclusion

1. The following individuals do not meet the threshold definition of Qualified Class Member, and are therefore not eligible to receive a pro-rata share of the Settlement Fund:

        **Sheryl Bankston**
        **Lars Barsoe**
        **Franck Buré**
        **George Cribbs**
        **Pnina Eliav**
        **Kevin J. Hackett**
        **Mary G. Harbison**
        **Daniel Queva**
        **Ranjit S. Rakhra**
        **Christopher Saranec**
        **Kam Sitthidet**
        **Stephen Stout**

2. The following individuals do not qualify to receive additional benefits under the Settlement Agreement beyond those set forth in the Final Determination letter issued by the Settlement Administrator. Each of these class members' pro-rata share of the Settlement Fund will be based on the eligible service periods and hours set forth in the Final Determination letter:

        **Kristin Acker**
        **Rodney Cook**
        **Danny Fyffe**
        **Tom Grauman**

**Pamela Hafey**

**Redmond Johnston**

**Steve Newman**

**Philip Rezek**

**John Shefcik**

<u>Within five (5) business days of docketing of this Report and Recommendation, the claims administrator, Rust Consulting, shall mail a copy of this Report and Recommendation, along with a copy of the cover letter, the proposed order, and judgment, to each of the individuals listed above</u>. Additionally, a copy of this Report and Recommendation and supporting documents shall be sent to counsel of record (via electronic notification), and to Judge Coughenour.

DATED this  22nd  day of March, 2005.

s/ Mary Alice Theiler<br>
United States Magistrate Judge

REPORT & RECOMMENDATION REGARDING CLASS
MEMBERS' APPEALS ON THE MERITS -15